O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE H. AMEZQUITA,<br><br>              Plaintiff,<br><br>       v.<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of Social Security,<br><br>              Respondent. | Case No. CV 15-0188-KES<br><br>MEMORANDUM OPINION<br>AND ORDER |

Plaintiff Jose H. Amezquita appeals the final decision of the Administrative Law Judge ("ALJ") denying his application for Disability Insurance Benefits ("DIB").  For the reasons discussed below, the Court concludes:  (1) the ALJ properly evaluated Plaintiff's treating chiropractor's opinion; and (2) the ALJ gave clear and convincing reasons for discounting Plaintiff's credibility.  The ALJ's decision is therefore AFFIRMED.

## I.

## BACKGROUND

On November 29, 2010, Plaintiff filed an application for disability insurance benefits, alleging disability beginning on September 8, 2009.

Administrative Record ("AR") 253-60.  Plaintiff alleges that he is unable to work due to lumbar radiculopathy, cervical sprain/strain, anxiety, and depression.  AR 285.

On September 12, 2012, an ALJ conducted a hearing, at which Plaintiff, who was represented by counsel, appeared and testified, with the assistance of an interpreter.  AR 67, 69-72, 84-97.  A medical expert also testified.  AR 75-83.  A vocational expert was present, but did not testify due to time constraints.  AR 84.  The ALJ continued the hearing to allow for further testimony.  AR 97.

On March 7, 2013, the ALJ conducted a second hearing, at which Plaintiff, who was represented by counsel, appeared and testified, with the assistance of an interpreter.  AR 54-57.  A vocational expert also testified.  AR 58-63.

On March 18, 2013, the ALJ issued a written decision denying Plaintiff's request for benefits.  AR 34-45.  The ALJ found that Plaintiff had the medically determinable impairments of disc protrusions of the cervical spine, mechanical neck/back pain, asthma, headaches, a depressive disorder, and an anxiety disorder, and that Plaintiff's impairments were, in combination, severe.  AR 36-37.  Notwithstanding his impairments, the ALJ concluded that Plaintiff had the residual functional capacity ("RFC") to perform medium work, except he was limited to frequent postural activities and simple work.  AR 39.  The ALJ determined that Plaintiff was capable of performing his past relevant work as a Metal Casting Machine Operator.  AR 43.  The ALJ additionally determined that other jobs existed in the national economy that Plaintiff could perform.  Id.  The ALJ thus found that Plaintiff was not disabled.  AR 45.

## II.

## ISSUES PRESENTED

The parties dispute whether the ALJ erred in:

2

(1) rejecting Plaintiff's treating chiropractor's opinion; and

(2) discounting Plaintiff's testimony concerning the intensity, persistence and limiting effects of his symptoms.

## III.

## DISCUSSION

**A.   The ALJ Properly Evaluated the Opinion of Dr. Aun.**

Plaintiff contends that the ALJ improperly evaluated the opinion of Dr. Bryan Aun, Plaintiff's treating chiropractor and primary treating physician in his worker's compensation matter.  Dkt. 25 at 5-13.  Specifically, Plaintiff argues that Dr. Aun's opinion was "entitled to treating status," and was consistent with the record.  Id.  Plaintiff alleges that Dr. Aun provided an opinion that supported greater physical limitations than those found by the ALJ. Id.

**1.     Relevant Background**

Dr. Aun first treated Plaintiff on November 5, 2009, as part of his worker's compensation claim, for back and leg pain due to two years of picking up and lifting airplane parts and tools, and prolonged standing at work. AR 373.  Dr. Aun opined that Plaintiff was temporarily totally disabled until December 19, 2009, and predicted that Plaintiff could return to modified work on December 19, 2009.  Id.  In a Primary Treating Physician's Progress Report dated December 2, 2010, Dr. Aun indicated that Plaintiff could return to modified work as of March 4, 2010, and that he was precluded from very heavy work, repetitive bending or stooping, and lifting, pushing, or pulling over 10 pounds.  AR 374.  On June 17, 2010, Dr. Aun completed a Primary Treating Physician's Final Impairment Rating Report, indicating that Plaintiff was released to modified work precluding very heavy work and repetitive bending/stooping, and precluding lifting, pushing or pulling over 10 pounds. AR 377.  Dr. Aun documented Plaintiff's complaints, including pain along the

3

neck which radiates into both upper shoulders; increased pain when turning his head to side and up and down; constant sharp pain about the lower back; and tingling, swelling, numbness and weakness of both legs. AR 376. Dr. Aun diagnosed Plaintiff with cervical spine sprain/strain/cervical facet syndrome; lumbar spine sprain/strain/lumbar facet syndrome; and psychological adjustment disorder (major depression, anxiety disorder, sleep disorder), secondary to chronic pain. AR 373, 379. Over the course of treatment, Dr. Aun referred Plaintiff to Dr. Williams, an orthopedic physician, for a pain management consultation; referred him to Dr. Grewal for psychological pain evaluation; and advised him to continue using his lumbar brace for support as necessary. Id.

### 2. Applicable Law

Medical sources are divided into two categories: "acceptable medical sources" and "other sources." 20 C.F.R. § 404.1513. In general, only licensed physicians and similarly qualified specialists are "acceptable medical sources" who can provide evidence to establish a claimant's impairment. 20 C.F.R. § 404.1513(a). Chiropractors are included in the "other sources" category, and can provide evidence to show the severity of a claimant's impairment and how it affects his ability to work. 20 C.F.R. § 404.1513(d). Opinions from "other sources" can be afforded "less weight than opinions from acceptable medical sources." Gomez v. Chater, 74 F.3d 967, 970-71 (9th Cir. 1996). "The ALJ may discount testimony from . . . 'other sources' if the ALJ 'gives reasons germane to each witness for doing so.'" Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) (quoting Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1224 (9th Cir. 2010)).

### 3. Analysis

The Court finds that the ALJ properly evaluated Dr. Aun's opinion and gave germane reasons for discounting it.

4

The ALJ gave "no weight" to Dr. Aun's opinion that Plaintiff was disabled and precluded from heavy work, repetitive bending/stooping, and lifting, pushing or pulling over 10 pounds not solely because Dr. Aun was not an acceptable medical source, but because the assessment was "contrary to the weight of the evidence."  AR 42; cf. Sanfilippo v. Astrue, 274 F. App'x. 551, 553 (9th Cir. 2008) (ALJ may not reject the opinion of a chiropractor solely on the ground that a chiropractor is not an acceptable medical source).

As an initial matter, the ALJ did not err in finding that Dr. Aun was not an "acceptable medical source."  Chiropractors are specifically classified as "other sources" in the Social Security regulations.  20 C.F.R. § 404.1513(d); see also SSR 06-03p ("other sources" include medical sources who are not "acceptable medical sources," such as chiropractors).

Plaintiff argues that Dr. Aun was a member of a "treatment team" of licensed physicians who were acceptable medical sources, and his opinion was, therefore, entitled to "treating status."[1]  Dkt. 25 at 7-9, 22-23.  He argues that Drs. Johnson, Pratley, and Turner worked in the same office as Dr. Aun and deferred to Dr. Aun's work restrictions.  Id. at 8.

Drs. Johnson, Pratley, and Turner issued Secondary Treating Physician's Progress Reports as part of Plaintiff's worker's compensation claim.  AR 404, 412, 455.  They made objective findings, prescribed medication, made treatment recommendations, and deferred Plaintiff's work status to Dr. Aun.  Id.  They executed their reports at the same address that Dr. Aun executed his progress reports.  AR 374, 404, 412, 455.  Evaluations

---

[1]     A treating physician's opinion is generally entitled to more weight than that of an examining physician, and an examining physician's opinion is generally entitled to more weight than that of a non-examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995) (citations omitted).

from an "other source" will not typically be treated as evidence from an "acceptable medical source" unless there is "evidence of such close supervision that the 'other source' becomes the agent of the 'acceptable medical source.'" Garcia v. Astrue, 2011 WL 3875483, *12 (E.D. Cal. Sept. 1, 2011); see also Molina, 674 F.3d at 1111 (finding physician's assistant not qualified as a treating source because the record did not show she worked under the physician's close supervision). There must be "an extremely close relationship before evidence from an 'other source' may be given 'acceptable source' status." Register v. Astrue, 2011 WL 6369766, *10 (D. Ariz. Dec. 20, 2011). Plaintiff presents no evidence indicating that Drs. Johnson, Pratley or Turner closely supervised Dr. Aun, consulted with him, or otherwise had an agency relationship with him, and the cases on which Plaintiff relies are inapposite.[2] See id. (finding "other source" opinion did not constitute an "acceptable medical source" opinion where claimant offered no evidence that the physician closely supervised the "other source," consulted with her, or had an agency

---

[2]     The court in Benton ex rel. Benton v. Barnhart, 331 F.3d 1030, 1037 (9th Cir. 2003), found that the use of a "treatment team" approach by health care providers was significant in determining the weight to be given to the opinion of a supervising psychiatrist who did not see plaintiff with any regularity, but who transmitted both his own knowledge and opinion of plaintiff, as well as the opinions of the medical treatment team providing "hands-on" treatment under his supervision. See Benton, 331 F.3d at 1036, 1039. Here, in contrast, there is no evidence that Dr. Aun lead a treatment team and that his opinion was based in part on the knowledge of his treatment team.

        The court in Garcia v. Astrue, 2011 WL 3875483, at *15-16, found that a physician's signature on the reports of a physician's assistant "d[id] not transform the reports into evidence from an 'acceptable medical source,'" but that the reports were entitled to consideration as "other source" evidence. Here, in contrast, the ALJ did not disregard Dr. Aun's opinion on the sole ground that he was not an "acceptable medical source."

6

relationship with her).  Accordingly, the Court finds that Dr. Aun's opinion is not transformed into evidence from an "acceptable medical source" merely because licensed physicians executed progress reports at the same office as Dr. Aun and deferred to Dr. Aun's work restrictions.

The ALJ gave a germane reason for rejecting Dr. Aun's "other source" opinion:  the opinion was contrary to the weight of the evidence.  AR 42; see Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005) ("Inconsistency with medical evidence" is a "germane reason[ ] for discrediting the testimony of lay witnesses.") (citation omitted).  The ALJ noted that the objective imaging studies did not support Dr. Aun's assessment.  AR 40, 384-86, 542, 794-95, 854-55, 871.  He further noted that at the consultative internal medicine evaluation on January 26, 2011, Plaintiff had full range of motion in the cervical spine despite reproducible pain/discomfort, mildly decreased extension of the dorsolumbar, negative straight leg raising test, and was able to walk without difficulties, including walking on toes and heels.  AR 40, 393-95. October 2011 treatment notes indicate findings of full range of motion of the back; no motor, vascular or sensory deficits; positive straight leg raising test on the right and negative on the left; right shoulder decreased range of motion; and decreased range of motion of the lumbar back without bony tenderness, swelling, deformity or spasm.  AR 40, 517, 541, 570.  At the consultative internal medicine evaluation on July 5, 2012, examinations of Plaintiff's cervical spine and gait were within normal limits.  AR 40, 951-52.  Plaintiff's range of motion of the lumbar spine was limited with flexion at 70/90 degrees, extension 20/20 degrees, and lateral flexion 25/30 degrees, and straight leg raising test was negative.  AR 40, 951.  The ALJ further noted that the examining and non-examining physicians concluded that Plaintiff could perform medium work with at least frequent postural activities.  AR 42, 395, 419-22, 441-42, 953; see SSR 06-3p ("The fact that a medical opinion is from

7

1    an 'acceptable medical source' is a factor that may justify giving that opinion
2    greater weight than an opinion from a medical source who is not an
3    'acceptable medical source' because . . . 'acceptable medical sources' 'are the
4    most qualified health care professionals.'").

5         Contrary to Plaintiff's contention, the opinions of consultative examiners
6    Dr. Afra and Dr. Sedgh constitute substantial evidence.  Dkt. 25 at 10-12.  An
7    examining physician's opinion constitutes substantial evidence when it is based
8    on independent clinical findings.  Orn v. Astrue, 495 F.3d 625, 632 (9th Cir.
9    2007).  Here, Dr. Afra examined Plaintiff on January 26, 2011, made
10   independent clinical findings, and opined that Plaintiff could push, pull, lift
11   and/or carry 50 pounds occasionally and 25 pounds frequently; walk and/or
12   stand 6 hours out of an 8-hour day; could frequently bend, kneel, stoop, crawl,
13   and/or crouch; and frequently walk on uneven terrain, climb ladders, and/or
14   work with heights.  AR 395.  Dr. Sedgh examined Plaintiff on July 5, 2012,
15   made independent clinical findings, and opined that Plaintiff could lift and
16   carry 50 pounds occasionally and 25 pounds frequently; and stand, walk
17   and/or sit for six hours out of an eight-hour day.  The opinions of Dr. Afra and
18   Dr. Sedgh were based on independent clinical findings and constitute
19   substantial evidence.

20        Moreover, the ALJ was entitled to rely on the opinion of the state
21   agency reviewing physician, Dr. Vaghaiwalla, over the opinion of Dr. Aun.
22   See Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) ("The opinions of
23   non-treating or non-examining physicians may also serve as substantial
24   evidence when the opinions are consistent with independent clinical findings
25   or other evidence in the record.") (citation omitted); 20 C.F.R.
26   § 404.1527(e)(2)(ii) (noting importance of agency physicians' expertise in
27   Social Security rules).  The ALJ accorded Dr. Vaghaiwalla's opinion that
28   Plaintiff could perform medium work with frequent posturals "great weight"

because it was consistent with the medical evidence and the opinions of the consultative examiners.  AR 42.

Plaintiff argues that Dr. Aun's opinion is not inconsistent with the record.  Dkt. 25 at 10-11.  Plaintiff cites Dr. Aun's findings of decreased range of motion in the cervical and lumbar spine, tenderness to palpation, radicular symptoms of the lower extremities, tenderness to palpation in the hands, and decreased range of motion of the shoulders; the consultative examiner's findings of limited range of motion with pain in the neck and dorsolumbar spine and a normal neurological examination; and indications of radiculopathy and pain in the Kaiser treatment records.  Id.  Plaintiff acknowledges that the imaging showed no significant findings, but argues that Dr. Aun's diagnosis is consistent with a "mechanical injury."  Id.  Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be upheld.  See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citation omitted).

Even if Dr. Aun's opinion were an "acceptable medical source" by way of his membership on a "treatment team" of licensed physicians, as Plaintiff argues, the ALJ's rejection of Dr. Aun's opinion was legally sufficient.  When a treating physician's opinion is contradicted by another doctor, the ALJ must provide "specific and legitimate reasons" for discounting it.  Lester, 81 F.3d at 830.  As discussed above, the ALJ specifically considered the evidence in the record and found that it did not support Dr. Aun's opinion.  AR 40-42.  A lack of supporting objective evidence is a specific and legitimate reason for rejecting a treating physician's opinion.  See Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004) (citation omitted).

It is the sole province of the ALJ to resolve conflicts in the medical-opinion evidence.  See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citation omitted); Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 603 (9th Cir. 1999) (holding that ALJ was "responsible for resolving conflicts" and

9

1   "internal inconsistencies" within doctors' reports) (citation omitted).
2   Accordingly, remand is not warranted on this issue.

3   **B.   The ALJ Gave Clear and Convincing Reasons for Discounting**
4   **Plaintiff's Credibility.**

5       Plaintiff next contends that the ALJ failed to articulate legally sufficient
6   reasons for rejecting his subjective symptom testimony concerning his physical
7   impairments.  Dkt. 25 at 24-30, 37-39.  The ALJ noted Plaintiff's allegations
8   that his ability to work was limited "by cervical sprain/strain so severe that he
9   had difficulty lifting 10 pounds or more and was unable to stand, walk or sit
10  more than one hour each."  AR 39 (citing AR 55, 285, 330).

11      **1.     Applicable Law**
12      An ALJ's assessment of symptom severity and claimant credibility is
13  entitled to "great weight."  See Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir.
14  1989); Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1986).  "[T]he ALJ is
15  not required to believe every allegation of disabling pain, or else disability
16  benefits would be available for the asking, a result plainly contrary to 42
17  U.S.C. § 423(d)(5)(A)."  Molina, 674 F.3d at 1112 (internal quotation marks
18  omitted).

19      In evaluating a claimant's subjective symptom testimony, the ALJ
20  engages in a two-step analysis.  See Vasquez v. Astrue, 572 F.3d 586, 591 (9th
21  Cir. 2009); Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007).
22  "First, the ALJ must determine whether the claimant has presented objective
23  medical evidence of an underlying impairment [that] could reasonably be
24  expected to produce the pain or other symptoms alleged."  Lingenfelter, 504
25  F.3d at 1036.  If so, the ALJ may not reject a claimant's testimony "simply
26  because there is no showing that the impairment can reasonably produce the
27  degree of symptom alleged."  Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir.
28  1996).

Second, if the claimant meets the first test, the ALJ may discredit the claimant's subjective symptom testimony only if he makes specific findings that support the conclusion. Berry v. Astrue, 622 F.3d 1228, 1234 (9th Cir. 2010). Absent a finding or affirmative evidence of malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony. Lester, 81 F.3d at 834; Ghanim v. Colvin, 763 F.3d 1154, 1163 & n.9 (9th Cir. 2014). The ALJ must consider a claimant's work record, observations of medical providers and third parties with knowledge of claimant's limitations, aggravating factors, functional restrictions caused by symptoms, effects of medication, and the claimant's daily activities. Smolen, 80 F.3d at 1283-84 & n.8. "Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis." Burch, 400 F.3d at 681.

The ALJ may also use ordinary techniques of credibility evaluation, such as considering the claimant's reputation for lying and inconsistencies in his statements or between his statements and his conduct. Smolen, 80 F.3d at 1284; Thomas, 278 F.3d at 958-59.

**2.    Analysis**

Following the two-step process outlined above, the ALJ found as follows:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements considering the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.[3]

---

[3]    The ALJ's "reasons explained in this decision" are at AR 39-43.

11

1   AR 40.

2        The ALJ gave four reasons for discounting Plaintiff's credibility:  (1) the

3   objective evidence was inconsistent with Plaintiff's allegations that he was

4   unable to perform any work activity; (2) Plaintiff's treatment history was

5   inconsistent with an alleged inability to perform all work activity; (3) Plaintiff's

6   daily activities were inconsistent with his alleged degree of impairment; and

7   (4) there was evidence that Plaintiff stopped working for reasons other than an

8   incapacity to work.  AR 40-41.

9                   a.    The objective evidence was inconsistent with Plaintiff's

10                       allegations of disabling symptoms.

11       Plaintiff contends that "[t]he medical evidence is consistent" and "[t]he

12  ALJ may not base an adverse credibility determination solely upon the

13  medical evidence."  Dkt. 25 at 25-26.

14       The Court disagrees.  First, the ALJ's determination that the objective

15  evidence is inconsistent with Plaintiff's allegations that he was unable to

16  perform any work activity is supported by substantial evidence.  As discussed

17  above, the ALJ noted the lack of significant abnormalities in the MRIs of the

18  cervical and lumbar spines and the electrodiagnostic study of the bilateral

19  lower extremities, as well as the examination findings and conclusions of the

20  consultative examiners.  AR 40, 384-86, 391-96, 542, 794-95, 854-55, 871, 949-

21  53; see also Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998) (An ALJ may

22  resolve questions of credibility "by setting out a detailed and thorough

23  summary of the facts and conflicting clinical evidence, stating his

24  interpretation thereof, and making findings") (citation omitted).  Kaiser

25  treatment records from 2011 indicate some positive findings, but no bony

26  _____

27  The Court has not quoted that discussion in full here, but discusses it in
    relevant part in the Court's analysis, below.

28

tenderness, no swelling, no deformity, and no spasm.  AR 570, 612-13.  An
October 8, 2011 x-ray of the lumbar spine showed no significant abnormality.
AR 520, 543.  The ALJ noted that "the lack of a medically determinable spinal
impairment significantly reduces the credibility of [Plaintiff's] complaints."
AR 41.  Kaiser records from January 2012 to January 2013 generally reflect
prescription refill requests; complaints of blurred vision, throat problems, and
genital herpes; and referral requests for a sleep study and acupuncture.  AR
998-1159.  Moreover, the fact that Dr. Aun returned Plaintiff to modified work
as of March 4, 2010 further contradicts Plaintiff's allegations that he was
unable to perform any work activity after the alleged disability onset date.  AR
473.

Plaintiff argues that the lack of positive findings on the MRI and EMG
are "irrelevant" considering Dr. Aun's diagnoses of cervical and lumbar
sprain, strain and facet syndrome.  Dkt. 25 at 26.  However, as discussed
above, the ALJ properly considered and rejected Dr. Aun's opinion.
Furthermore, Plaintiff's argument that Dr. Aun's diagnoses are consistent with
a "more mechanical injury than a nerve injury" is unpersuasive because
consultative examiner Dr. Afra also opined that Plaintiff had mechanical-type
back and neck pain, yet could perform medium work with frequent posturals.
AR 395.  The ALJ could have reasonably determined from the record  that the
objective evidence did not support Plaintiff's allegations that he was unable to
work.

Second, the ALJ did not rely solely on the lack of supporting medical
evidence.  As discussed below, the ALJ gave three other clear and convincing
reasons to discount Plaintiff's credibility concerning the severity and limiting
effects of his pain.  The ALJ was permitted to consider the lack of supporting
medical evidence as a factor confirming his other reasons.  See Burch, 400
F.3d at 681; Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) ("While

subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects.") (citation omitted); SSR 96-7p (same).

> b.    Plaintiff's treatment history was inconsistent with an alleged inability to perform all work activity.

The ALJ determined that Plaintiff's overall treatment history was inconsistent with his allegations, noting that despite Plaintiff's claims of disabling symptoms, physical therapy and medications helped, he reported no side effects during treatment, and he did not seek additional treatment. AR 41 (citing AR 345, 491, 509, 519, 1099). Plaintiff testified that epidural steroid injections in December 2011 and June 2012 provided relief for approximately three months. AR 41, 89, 491-92, 1062. Plaintiff reported temporary relief from his medications and reported that his medications work "moderately effectively." AR 453, 722; see also Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling.") (citations omitted).

Plaintiff argues that even though his medications provided some relief, he experienced continued symptomotology, evidenced by consistent refills for MS Contin (morphine) three times a day. Dkt. 25 at 26-27 (citing AR 992, 999, 1002, 1096, 1099, 1105, 1129). However, as the ALJ noted, Plaintiff testified at the March 2013 hearing that he takes morphine only when the "pain is strong," usually two or three times a week, and he testified in September 2012 that he used morphine "almost daily." AR 56, 89. The ALJ could have reasonably found that Plaintiff's course of treatment, despite the continued use of morphine when the pain was strong, was inconsistent with an alleged inability to perform all work activity.

The ALJ also noted inconsistencies and lack of support in the record for

Plaintiff's reported side effects from his medication.  Dkt. 25 at 34; AR 41.  At the September 2012 hearing, Plaintiff testified that morphine made him feel dizzy and that he had complained to the doctor about the side effects.  AR 93. At the March 2013 hearing, Plaintiff testified that morphine caused his mouth to get "very dry."  AR 56-57.  As the ALJ noted, the evidence in the record contradicts Plaintiff's testimony about side effects.  AR 41.  In his Disability Report – Appeal, Plaintiff stated that he did not have side effects from his medications.  AR 345.  He reported no problems with his medication in a September 2011 treatment note.  AR 453.  Another treatment note specifically indicates no dizziness.  AR 674.  Similarly, the medical expert testified that there was no evidence in the treatment records that Plaintiff suffered from side effects from his medications.  AR 83.  To the extent the ALJ discounted Plaintiff's credibility based on inconsistencies between Plaintiff's assertion of medication side effects and the lack of such complaints in the treatment records, the ALJ did not err.  See Westfall v. Colvin, 2014 WL 988787, at *2 (C.D. Cal. Mar. 13, 2014) ("[T]he contradiction between assertions of medication side effects and the lack of any such complaints in treatment records" is a "recognized credibility assessment factor.") (citing Greger v. Barnhart, 464 F.3d 968, 973 (9th Cir. 2006)); Santos v. Astrue, 2011 WL 5865569, at *6 (C.D. Cal. Nov. 21, 2011) (holding that the ALJ's credibility determination was supported by the lack of clinical evidence supporting the claimant's claims of medication side effects) (citing Miller v. Heckler, 770 F.2d 845, 849 (9th Cir. 1985)).

Based on the record as a whole, the ALJ's finding that Plaintiff's treatment was inconsistent with the claimed severity of his pain is supported by substantial evidence, and it provides another clear and convincing reason for discounting Plaintiff's testimony.  See Burch, 400 F.3d at 681.

15

c.   Plaintiff's daily activities were inconsistent with his claims of disabling symptoms.

The ALJ noted that despite Plaintiff's claims of disabling symptoms, he was able to tend to his personal care needs, do light cleaning and laundry, prepare complete meals, care for his daughters – including sending them to school, picking them up, and helping them with their homework – go outside three times a day, shop in stores twice a week, attend church on a regular basis, handle money, read, do crossword puzzles, and use public transportation.  AR 41 (citing AR 298-302, 306-10, 962).  Plaintiff argues that he has to take breaks when doing household chores, which is "inconsistent with sustained work activity," and he continued to have pain even after physical therapy helped him meet his goal of being able to walk for 40 minutes so he could walk his daughter to and from school.  Dkt. 25 at 27-28; AR 300, 1157.

That Plaintiff maintained a reasonably normal level of daily activities was a clear and convincing reason to discount his credibility, even if his impairments made those activities somewhat more challenging.  See Burch, 400 F.3d at 681 (noting that ALJ may discredit allegations of disability on basis that claimant engages in daily activities involving skills that could be transferred to the workplace); Curry v. Sullivan, 925 F.2d 1127, 1130 (9th Cir. 1990) (as amended) (finding that the claimant's ability to "take care of her personal needs, prepare easy meals, do light housework and shop for some groceries . . . may be seen as inconsistent with the presence of a condition which would preclude all work activity") (citing Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989)); Molina, 674 F.3d at 1113 ("Even where [claimant's] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims

16

1    of a totally debilitating impairment.").  Plaintiff's daily activities provide

2    another clear and convincing reason for discounting Plaintiff's testimony.

3                    d.    Evidence indicated that Plaintiff stopped working for

4                          reasons other than an incapacity to work.

5         The ALJ found that despite Plaintiff's allegation that he stopped working

6    because of his impairments, evidence indicated that Plaintiff stopped working

7    for other reasons.  AR 41.  The ALJ noted that Plaintiff testified that he

8    stopped working because his employer moved out of state, and treatment notes

9    on February 7, 2011 indicate that Plaintiff stopped working because he was

10   laid off.  AR 41, 55, 84, 285, 816, 929.  Plaintiff argues that his statements

11   regarding being laid off and his employer moving out of the state are not

12   inconsistent.  Dkt. 25 at 28.  That may be true, but it does not impugn the

13   ALJ's credibility determination.[4]  The ALJ discounted Plaintiff's credibility

14   because of evidence that Plaintiff stopped working for reasons other than

15   incapacity to work, not because of an inconsistency between statements

16   regarding being laid off and his employer moving.  AR 41.  An ALJ is entitled

17   to rely on "ordinary techniques of credibility evaluation."  Smolen, 80 F.3d at

18   1284; see also Fair, 885 F.2d at 603 ("If a claimant . . . is found to have been

19   less than candid in other aspects of his testimony, that may properly be taken

20        _____

        [4] Plaintiff's reliance on Soto-Olarte v. Holder, 555 F.3d 1089, 1092 (9th

21   Cir. 2009), for the proposition that "[o]nce a perceived inconsistency between

22   the written record and the oral testimony arises, the ALJ must confront the

     claimant with the inconsistency and if an explanation is made address that

23   explanation," is misplaced here.  Even if there were a perceived inconsistency

24   between the record and oral testimony, Plaintiff has not demonstrated that the

     rule in Soto-Olarte applies in the social security context.  See Mulay v. Colvin,

25   2015 WL 1823261, at *6 (C.D. Cal. Apr. 22, 2015) (rejecting contention that

     Soto-Olarte applies in the social security context) (citing Palomo v. Colvin,

26   2014 WL 4929090, at *7 n.6 (C.D. Cal. Oct. 1, 2014) (same) (remaining

27   citations omitted)).

28

                                         17

into account in determining whether his claim of disabling pain should be believed."). This provides a fourth clear and convincing reason for discounting Plaintiff's testimony.

On appellate review, this Court is limited to determining whether the ALJ properly identified reasons for discrediting Plaintiff's credibility. Smolen, 80 F.3d at 1284. The lack of evidence to support the severity of Plaintiff's pain allegations in the medical evidence, his treatment history, his daily activities, and the evidence that Plaintiff stopped working for reasons other than his medical conditions were proper and sufficiently specific bases for discounting Plaintiff's claims of disabling symptoms, and the ALJ's reasoning was clear and convincing. See Tommasetti v. Astrue, 533 F.3d 1035, 1039-40 (9th Cir. 2008); Houghton v. Comm'r Soc. Sec. Admin., 493 F. App'x 843, 845 (9th Cir. 2012). Because the ALJ's findings were supported by substantial evidence, this Court may not engage in second-guessing. See Thomas, 278 F.3d at 959; Fair, 885 F.2d at 604. Remand is therefore not warranted on this issue.

## IV.

## CONCLUSION

For the reasons stated above, the decision of the Social Security Commissioner is AFFIRMED and the action is DISMISSED with prejudice.

Dated: April 28, 2016

Karen E. Scott
_____
KAREN E. SCOTT
United States Magistrate Judge

18